UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERN VINEYARDS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>AM GROUP, INC., a California corporation, and CHRIS KIM, an individual,<br><br>Defendants. | No. 1:20-cv-00199-NONE-JLT<br><br>ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER; AND ORDERING DEFENDANTS TO SHOW CAUSE RE PRELIMINARY INJUNCTION<br><br>(Doc. No. 3) |

On February 7, 2020, plaintiff Kern Vineyards, Inc., filed a complaint and motion for temporary restraining order ("TRO") under the Perishable Agricultural Commodities Act ("PACA"), seeking "*ex parte*"[1] temporary injunctive relief to prevent defendants AM Group, Inc., ("AM Group") and Chris Kim from dissipating assets held in a statutory trust for plaintiff. (Doc. Nos. 1, 3.) As of the date and time of entry of this order, no defendant has filed an opposition to the pending motion or otherwise attempted to communicate with the court. Having reviewed the

---

[1] Although the request was styled as *ex parte*, plaintiff has made reasonable attempts to provide notice to defendants via telephone, email, and overnight delivery. (Doc. No. 11.) The overnight delivery tracking number indicates all relevant documents were delivered at 9:43 am on February 11, 2020, to the front door of defendants' business location in Fresno, California, the same address for defendant listed with the California Secretary of State. (*Id.*, Ex. 2.)

1

record and the relevant authorities, the court grants the motion for a TRO and orders defendants to show cause why a preliminary injunction should not issue.

**BACKGROUND**

Between August 9 and October 4, 2019, plaintiff sold table grapes to defendants totaling an invoiced amount of $146,045.00.[2] (Doc. No. 7 at ¶¶ 2, 11, Declaration of Thomas Buckley ("Buckley Decl.").) On October 1, 2019, the parties met to discuss delinquent payments. (*Id*. at ¶ 21.) At that time, defendants provided plaintiff assurances that payments on the invoices disputed in this lawsuit would be forthcoming. (*Id*.) Plaintiff received no further communications or payments from defendants in October or November 2019. (*Id*. at ¶ 22.) On December 15, 2019, Kim assured plaintiff that payment would be made. (*Id*. at ¶ 23.) Nonetheless, plaintiff still has yet to receive payment on the disputed invoices. (*Id*.)

As a result, plaintiff initiated a complaint with the United States Department of Agriculture ("USDA"). (*Id*.) Based on the fact that there was at least one other complaint submitted against AM Group, USDA advised plaintiff to file suit to enforce its rights. (*Id*.)

In addition to the principle sum plaintiff claims is owed, the relevant invoices each disclose a contractual finance charge of 1.5% per month. (*Id*., Ex. 3.) Plaintiff's counsel has calculated the cumulative finance charge due to plaintiff to be $7,850.18 through January 31, 2020. (Doc. No. 4 at ¶¶ 14, 16, Declaration of Craig A. Tristao ("Tristao Decl.").) This calculation appears to be accurate. Finally, the invoices contain language permitting plaintiff to add to the amount owed any "necessary collection costs, including attorney's fees." (Buckley Decl., Ex. 3.) Plaintiff's counsel indicates that to date he has expended 24 hours on this matter at a billable rate of $300.00 per hour for a total of $7,200.00. (Tristao Decl. at ¶ 13.) In addition, plaintiff has incurred filing fees in the amount of $400.00 to initiate this lawsuit. (*Id*.) The expended time, hourly rate, and costs appear facially reasonable/allowable under the

/////

---

[2] According to plaintiff, defendants purchased table grapes from plaintiff in the past. Plaintiff concedes that defendants raised concerns about a quality issue for a prior shipment that is not the subject of this dispute and is not included in the $146,045.00 plaintiff claims to be owed. (Buckley Decl. at ¶ 20.)

2

circumstances. In sum, the principal plus finance charges, attorney's fees and costs totals $161,495.18.

**LEGAL STANDARD**

**A.    PACA**

"Congress enacted PACA in 1930 to promote fair trading practices in the produce industry." *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 135 (3d Cir. 2000) (citation omitted).   In particular, the statute requires that "perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents." 7 U.S.C. § 499e(c)(2).  If a seller of produce is not paid, it must give written notice of its intent to preserve its rights, which may be accomplished by including a statutorily specified notice in its invoices.  *See* 7 U.S.C. § 499e(c); *Tanimura & Antle, Inc.*, 222 F.3d at 136.  Any failure to "make full payment promptly" in respect to a transaction is unlawful.  7 U.S.C. § 499b(4).  Any violation of § 499b subjects the buyer to liability for any damages caused by the violation.  7 U.S.C. § 499e(a).  Moreover, federal regulations state that all dealers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities."  7 C.F.R. § 46.46(d)(1).  District courts are specifically given jurisdiction to hear "actions by trust beneficiaries to enforce payment from the trust" and "actions by the Secretary to prevent and restrain dissipation of the trust."  7 U.S.C. § 499e(c)(5). The trust formed by PACA from the dealer's assets is "a single, undifferentiated trust for the benefit of all sellers and suppliers."  *In re Kornblum & Co., Inc.*, 81 F.3d 280, 286 (2d Cir. 1996).

**B.    TRO Standard**

The standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction.  *See Stuhlbarg Intern. Sales Co. v. John D. Brush &*

*Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction."); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (quoting *Lands Council v. McNair*, 537 F.3d 981, 97 (9th Cir. 2008) (en banc)).[3] The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

**ANALYSIS**

District courts in the Ninth Circuit have regularly found TROs warranted in the PACA context, and routinely conclude that the prospect of statutory trust assets being depleted constitutes irreparable injury. *See, e.g.*, *CP Produce, LLC v. Quality Fresh Farms, Inc.*, No. 1:18-cv-00077 DAD EPG, 2018 WL 1980749, at *1 (E.D. Cal. Jan. 19, 2018); *Chula Brand CA, Corp. v. Martinez*, 17cv37-JLS (KSC), 2017 WL 107672, at *3–4 (S.D. Cal. Jan. 11, 2017); *Newland N. Am. Foods, Inc. v. H.P. Skolnick, Inc.*, No. 5:13-cv-00934 EJD, 2013 WL 792672, at *3 (N.D. Cal. Mar. 4, 2013); *Herb Fresh, LLC v. GR Prods., LLC*, No. 5:12-cv-03669 EJD, 2012 WL

---

[3] The Ninth Circuit has found that this "serious question" version of the circuit's sliding scale approach survives "when applied as part of the four-element *Winter* test." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

4

2906592, at *2–3 (N.D. Cal. July 16, 2012); *Pittman v. Stow Food – Navajo, Inc.*, No. 12cv1670-IEG (WMC), 2012 WL 12885231, at *1–2 (S.D. Cal. July 6, 2012); *T.Q.M. Food Serv., Inc. v. Santanas Grill, Inc.*, No. 12cv1254-IEG (MDD), 2012 WL 12872452, at *1–2 (S.D. Cal. June 6, 2012); *Batth v. Market 52, Inc.*, No. 1:11-CV-1806 AWI SKO, 2011 WL 5240439, at *2 (E.D. Cal. Nov. 1, 2011); *F.T. Produce, Inc. v. AGWA, Inc.*, No. 11-CV-102 JLS (WVG), 2011 WL 677259, at *3 (S.D. Cal. Jan. 21, 2011); *Rey Produce SFO, Inc. v. Mis Amigos Meat Market, Inc.*, No. C 08-1518 VRW, 2008 WL 1885738, at *1–2 (N.D. Cal. 2008) (granting preliminary injunction, and noting TRO was previously granted).[4]

Here, plaintiff has shown it is likely to succeed on the merits of its claim. Plaintiff persuasively asserts that defendants are "dealers" within the meaning of PACA. (*See* Buckley Decl. at ¶¶ 6–9.) Among other things, plaintiff has presented evidence that during the relevant timeframe defendant AM Group operated under USDA PACA license number 20160590, which lists Kim as the principal for AM Group. (*Id.* at ¶ 9 & Ex. 2.) Plaintiff has likewise produced evidence that during the relevant timeframe it operated under PACA license number 20150701. (*Id.* at ¶ 27.)

Plaintiff further demonstrates that the produce at issue was sold in interstate commerce, as required by 7 U.S.C. § 499a(b)(8). (*Id.* at ¶ 15 & Ex. 3.) The invoices sent to defendants contain the statutorily required language to ensure plaintiff preserved its right to the benefits of the statutory trust under 7 U.S.C. § 499e(c)(4). (*Id.* at ¶ 28 & Ex. 3.) Plaintiff has likewise produced evidence that the invoices it seeks payment for have not been paid. (*Id.* at ¶¶ 20–23 & Ex. 3.) Invoices totaling $146,045.00, reflecting table grape shipments sold to defendant AM Group, are attached (*id.*, Ex. 3), and counsel has provided support for the requested, contractually allowable interest, attorney's fees, and costs (*see* Tristao Decl. at ¶¶ 13–16.) Accordingly, and in light of

---

[4] Some courts have declined to grant PACA TROs on an *ex parte* basis without a strong showing of the defendant's general financial instability and evidence that defendant is dissipating the funds that are intended to be held in trust for the plaintiff. *See Fortune Farm, Inc. v. S. Cal. Produce, Inc.*, No. CV16-3027 PSG (JEMx), 2016 WL 9185317, at *2 (C.D. Cal. May 6, 2016); *W. Onion Sales, Inc. v. Gonzalez Transp. & Foods, Inc.*, No. SACV 13-0156 DOC (MLGx), 2013 WL 12122416, at *2–3 (C.D. Cal. Jan. 31, 2013). As mentioned, while the instant motion was initially sought *ex parte*, defendants have since been given notice of this lawsuit, although proof of formal service has not yet been received by the court.

the absence of any evidence to the contrary, the court finds it is likely plaintiff will succeed on the merits of its PACA claim.

Plaintiff has also shown a likelihood of irreparable injury in the form of dissipation of the trust assets. Plaintiff's sales manager, Thomas Buckley, declares that Kim admitted that the table grapes in dispute were sold to a company in Korea, possibly to a related family company. (Buckley Decl.§ at ¶ 25.) Any proceeds from those sales would therefore be trust assets. *See* 7 U.S.C. § 499e(c)(2). However, the fact that defendants repeatedly broke promises to remit even partial payments to plaintiff suggests to Buckley that the trust assets have been or are being dissipated. (Buckley Decl. ¶ 25.) In addition, Buckley "is informed and believe[s] that AM Group is suffering severe financial difficulties and that PACA trust assets rightfully belonging to Plaintiff are being dissipated, possibly forever beyond Plaintiff's reach." (*Id*.) As identified above, courts routinely accept the dissipation of assets from the statutory trust as indicative of irreparable injury.

The balance of equities thus tips clearly in favor of plaintiff here. Plaintiff is statutorily entitled to a trust in the proceeds of any sales from the produce it shipped until the outstanding invoices are paid in full. *See* 7 U.S.C. § 499e(c)(2). Defendants' failure to respond to the motion for a TRO results in a failure on their part to demonstrate any hardship they will suffer by being forced to not dissipate the trust assets.

Lastly, the issuance of an injunction here would be in the public interest. Congress specifically passed this statute because it had found there was "a burden on commerce in perishable agricultural commodities." 7 U.S.C. § 499e(c)(1); *Tanimura & Antle, Inc.*, 222 F.3d at 135 ("In particular, Congress intended to protect small farmers and growers who were especially vulnerable to the practices of financially irresponsible commission merchants, dealers, and brokers."). Given plaintiff's high likelihood of success on the merits and the Congressional directive in passing PACA, the public interest will be served by granting the TRO here.

Rule 65 states a court may only issue a TRO "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Because the only evidence before

the court indicates the invoices are due and owing, and defendants' failure to participate results in the absence of any showing of any hardship, the court concludes no bond or posting of security is required of plaintiff at this time.

**TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**

For the reasons set forth above:

IT IS HEREBY ORDERED that Defendants AM Group, Inc., and Chris Kim appear in Courtroom 4 of the U.S. District Court for the Eastern District of California, Fresno Division, located at 2500 Tulare Street, Seventh Floor, Fresno, CA 93721 on **February 21, 2020, at 1:30 p.m.**, to show cause why they, and their agents, bankers, subsidiaries, successors, assignees, principals, employees, officers, directors, shareholders, attorneys, and representatives should not be restrained and preliminarily enjoined during the pendency of this action, pursuant to Federal Rule of Civil Procedure 65, from engaging in, committing, or performing directly and indirectly, any and all of the following acts:

A.  Removing, withdrawing, transferring, assigning or selling to any other person or entity, the proceeds from the sales of any or all existing or future inventories of food or other products derived from perishable (including frozen) agricultural commodities, and/or receipts of payment for products sold prior to the date of this order and/or otherwise disposing of assets, books or funds;

B.  Taking any other action whatsoever which causes, has the effect of causing, or which otherwise dissipates plaintiff's beneficiary interests in PACA trust assets. 7 U.S.C. §499e, et seq.;

C.  Taking any other action whatsoever which violates 7 U.S.C. §499e(c)(1) through (4), inclusive, and/or 7 U.S.C. §499b(4) [PACA § 2].

IT IS FURTHER ORDERED that defendants and any owners, officers, directors, shareholders, employees, agents, subsidiaries, successors, assignees, principals, assignors, attorneys and persons acting in concert with them, appear at the same time and place to show cause, if any they have, why they should not be commanded by order of this court and required to distribute PACA trust assets in the amount of at least $161,495.18, consisting of the principal sum

7

due of $146,045.00, plus contractual finance charges through January 31, 2020 in the amount of $7,850.18, plus reasonable attorneys' fees in the amount of $7,200.00, plus filing fees of $400.00, owing to plaintiff.

IT IS FURTHER ORDERED that pending the hearing and determination of the foregoing Order to Show Cause, defendants and their officers, directors, shareholders, employees, agents, bankers, subsidiaries, successors, assignees, principals, attorneys, and persons acting in concert with them shall be and hereby are prevented from transferring, withdrawing or in any other manner removing PACA trust assets, including funds on deposit in banking accounts held by or on behalf of defendants, from defendants' banking accounts, including but not limited to defendants' accounts held at Wells Fargo Bank or any other banking account standing in defendants' name or for its benefit.

IT IS FURTHER ORDERED that pending the hearing and determination of the foregoing Order to Show Cause, and continuing thereafter, defendant and its owners, officers, directors, shareholders, employees, agents, subsidiaries, successors, assignees, principals, assignors, attorneys and persons acting in concert with them, shall be preliminarily enjoined from engaging in, committing, or performing directly and indirectly, any and all of the following acts:

D. Removing, withdrawing, transferring, assigning or selling to any other person or entity, the proceeds from the sales of any or all existing or future inventories of food or other products derived from perishable agricultural commodities, and/or receipts of payment for products or crops sold prior to the date of this order and/or otherwise disposing of assets, books or funds;

E. Taking any other action whatsoever which causes, has the effect of causing, or which otherwise dissipates plaintiff's beneficiary interests in the trust assets;

F. Taking any other action whatsoever which violates 7 U.S.C. §499e(c)(1) through (4), inclusive, and 7 U.S.C. §499b(4) [PACA § 2].

IT IS FURTHER ORDERED that in the event defendants lack sufficient funds to promptly deposit the sums described above, defendants shall be and hereby are required and ordered to:

G.  Immediately account to the court and plaintiff for all assets of the PACA trust from commencement of defendants' business through the date of this Order.

H.  Endorse any checks made, endorsed or paid, wire transfers, and cash receipts to defendants which are trust assets and which are in their possession or obtainable by defendants at the time of the entry of this Order, or which defendants obtains or which become obtainable by defendants after the entry of this Order, including but not limited to checks representing payment for sales of inventory, and shall deliver said assets within 48 hours of defendants' receipt of them to plaintiff's counsel as set forth above.  Likewise, defendants shall deliver any cash assets of the PACA trust which are in its possession or are obtainable by defendants at the time of the entry of this order, or which defendants obtain or which become obtainable by defendants after entry of this Order, within 48 hours of defendants' receipt of them to plaintiff's counsel.

I.  Deposit all checks, wire transfers and cash receipts received after the issuance of the order with the court or in Wells Fargo, which shall be frozen until there are sufficient assets set aside to pay plaintiff in the amount of $164,656.50.

J.  File weekly with this court satisfactory evidence of compliance with the terms of this Order.

IT IS FURTHER ORDERED that pending the hearing and determination of the foregoing Order to Show Cause, and continuing thereafter, plaintiff and its counsel, agents, or representatives, shall have upon two-weeks' notice to defendants, full and complete and continuing access to all of defendant's books and records, which shall include but not necessarily be limited to, defendant's accounts receivable and payable ledgers, invoices, ledgers, computer runs, bank statements and canceled checks, relating to defendants' business and financial status from commencement of defendants' business activities forward for the purposes of verifying defendants' accountings required by this Order and for enforcement of this Order.  Defendants shall, upon 48 hours' notice by plaintiff's counsel, allow inspection and copying of the books and records of said defendants by plaintiff or its representatives at defendants' place of business. Defendants will be required to report to the court and to plaintiff's counsel on a weekly basis to the amount and status of its receivables and payments received.

IT IS FURTHER ORDERED that pending the hearing and determination of the foregoing Order to Show Cause, and continuing thereafter, plaintiff shall be entitled to depose, under oath, at reasonable times and places, upon at least 48 hours' notice, defendants and/or defendants' principals, owners, directors, officers, shareholders, employees, agents and accountants concerning any matter pertaining to any accounting due pursuant to this Order, any books or records which plaintiff is entitled to inspect under this Order, the trust assets or any of defendants' business assets, and/or defendants' business practices, procedures or operations from commencement of defendants' business activities.

IT IS FURTHER ORDERED that Wells Fargo Bank, or any other bank found to be holding funds standing in defendant's name, release information to plaintiffs' counsel about the above-described accounts, including the amounts contained in the accounts, in confidence and only to the extent necessary to verify compliance with the terms of this Order.

IT IS FURTHER ORDERED that no bond shall be required to be posted by plaintiff before the Temporary Restraining Order is effective.

IT IS FURTHER ORDERED that plaintiff shall serve defendant with copies of this Order and all pleadings and other papers in support of the Order on or before **Friday, February 14, 2020**, by overnight courier service with verification of receipt. Defendants shall file an Opposition, if any, to the Order to Show Cause on or before **noon (Pacific Time) on Wednesday, February 19, 2020**, and shall personally serve plaintiff's counsel with a copy of said opposition by said deadline. Plaintiff shall file and serve its reply to defendant's opposition, if any, on or before **noon (Pacific Time) on Thursday, February 20, 2020**.

Defendants are warned that failure to timely file an opposition waives any right to be heard in opposition at the hearing on the pending motion and may result in the hearing being vacated and the matter submitted for decision on the papers. *See* Local Rule 230(c); *see also Goldberg v. Barreca*, 720 F. App'x 877, 878 (9th Cir. 2018) (holding district court did not abuse

/////
/////
/////

its discretion by failing to hold evidentiary hearing when initially ruling on preliminary injunction motion because it did not need to resolve any factual disputes).[5]

Defendants are further notified of its right to apply to the court for modification or dissolution of this Temporary Restraining Order on two (2) days' notice or such shorter notice as the court may allow. *See* Fed. R. Civ. P. 65(b) and Local Rule 231(c)(8).

IT IS SO ORDERED.

Dated: **February 12, 2020**

UNITED STATES DISTRICT JUDGE

---

[5] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).