UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERN VINEYARDS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>AM GROUP, INC., a California corporation, and CHRIS KIM, an individual,<br><br>Defendants. | No. 1:20-cv-00199-NONE-JLT<br><br>ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION<br><br>(Doc. No. 3) |

**INTRODUCTION**

On February 7, 2020, plaintiff Kern Vineyards, Inc., filed a complaint and a motion for temporary restraining order (TRO) or, alternatively, preliminary injunction under the Perishable Agricultural Commodities Act (PACA), seeking "*ex parte*"[1] injunctive relief to prevent defendants AM Group, Inc., (AM Group) and Chris Kim from dissipating assets held in a statutory trust for plaintiff. (Doc. Nos. 1, 3.) Despite plaintiff's efforts to provide notice of the TRO motion, defendant failed to oppose or otherwise communicate with the court. Accordingly, on February 12, 2020, the court granted the motion for a TRO and ordered defendants to show

---

[1] Although the request was styled as *ex parte*, plaintiff made reasonable attempts to provide notice to defendants via telephone, email, and overnight delivery. (Doc. No. 11.)

1

cause why a preliminary injunction should not issue, requiring defendants to file any opposition in writing on or before noon (Pacific Time) on February 19, 2020, and setting the matter for hearing on February 21, 2020, at 1:30 pm. (Doc. No. 12 (TRO Order).) Both defendants were personally served on February 13, 2020, with all documents filed as of that date, including the temporary restraining order. (*See* Doc. Nos. 14, 15, 16.)

As of the date of this Order no defendant has filed any opposition or otherwise communicated with the court. Nor has counsel for plaintiff received any opposition from either defendant. (See ECF No. 16 at 2.) The pending motion for preliminary injunction was heard in open court on February 21, 2020, as scheduled. Plaintiff's counsel appeared, but no defendant made an appearance.

For the reasons set forth below, which mirror the reasons set forth in the temporary restraining order, plaintiff's request for entry of a preliminary inunction is GRANTED.

## BACKGROUND

Between August 9 and October 4, 2019, plaintiff sold table grapes to defendants totaling an invoiced amount of $146,045.00.[2] (Doc. No. 7 at ¶¶ 2, 11, Declaration of Thomas Buckley (Buckley Decl.).) On October 1, 2019, the parties met to discuss delinquent payments. (*Id*. at ¶ 21.) At that time, defendants provided plaintiff assurances that payments on the invoices disputed in this lawsuit would be forthcoming. (*Id*.) Plaintiff received no further communications or payments from defendants in October or November 2019. (*Id*. at ¶ 22.) On December 15, 2019, Kim assured plaintiff that payment would be made. (*Id*. at ¶ 23.) Nonetheless, plaintiff still has yet to receive payment on the disputed invoices. (*Id*.)

As a result, plaintiff initiated a complaint with the United States Department of Agriculture ("USDA"). (*Id*.) Based on the fact that there was at least one other complaint submitted against AM Group, USDA advised plaintiff to file suit to enforce its rights. (*Id*.)

/////

---

[2] According to plaintiff, defendants purchased table grapes from plaintiff in the past. Plaintiff concedes that defendants raised concerns about a quality issue for a prior shipment that is not the subject of this dispute and is not included in the $146,045.00 plaintiff claims to be owed. (Buckley Decl. at ¶ 20.)

2

In addition to the principle sum plaintiff claims is owed, the relevant invoices each disclose a contractual finance charge of 1.5% per month. (*Id.*, Ex. 3.) Plaintiff's counsel has calculated the cumulative finance charge due to plaintiff to be $7,850.18 through January 31, 2020. (Doc. No. 4 at ¶¶ 14, 16, Declaration of Craig A. Tristao (Tristao Decl.).) This calculation appears to be accurate. Finally, the invoices contain language permitting plaintiff to add to the amount owed any "necessary collection costs, including attorney's fees." (Buckley Decl., Ex. 3.) Plaintiff's counsel indicates that to date he has expended 24 hours on this matter at a billable rate of $300.00 per hour for a total of $7,200.00. (Tristao Decl. at ¶ 13.) In addition, plaintiff has incurred filing fees in the amount of $400.00 to initiate this lawsuit. (*Id.*) The expended time, hourly rate, and costs appear facially reasonable/allowable under the circumstances. In sum, the principal plus finance charges, attorney's fees and costs totals $161,495.18.

## LEGAL STANDARD

### A. PACA

"Congress enacted PACA in 1930 to promote fair trading practices in the produce industry." *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 135 (3d Cir. 2000) (citation omitted). In particular, the statute requires that "perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents." 7 U.S.C. § 499e(c)(2). If a seller of produce is not paid, it must give written notice of its intent to preserve its rights, which may be accomplished by including a statutorily specified notice in its invoices. *See* 7 U.S.C. § 499e(c); *Tanimura & Antle, Inc.*, 222 F.3d at 136. Any failure to "make full payment promptly" in respect to a transaction is unlawful. 7 U.S.C. § 499b(4). Any violation of § 499b subjects the buyer to liability for any damages caused by the violation. 7 U.S.C. § 499e(a). Moreover, federal regulations state that all dealers "are required to maintain trust

assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." 7 C.F.R. § 46.46(d)(1). District courts are specifically given jurisdiction to hear "actions by trust beneficiaries to enforce payment from the trust" and "actions by the Secretary to prevent and restrain dissipation of the trust." 7 U.S.C. § 499e(c)(5). The trust formed by PACA from the dealer's assets is "a single, undifferentiated trust for the benefit of all sellers and suppliers." *In re Kornblum & Co., Inc.*, 81 F.3d 280, 286 (2d Cir. 1996).

**B.     Preliminary Injunction Standard**

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction."); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (quoting *Lands Council v. McNair*, 537 F.3d 981, 97 (9th Cir. 2008) (en banc)).[3] The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

/////

---

[3] The Ninth Circuit has found that this "serious question" version of the circuit's sliding scale approach survives "when applied as part of the four-element *Winter* test." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

**ANALYSIS**

District courts in the Ninth Circuit have regularly found injunctive relief warranted in the PACA context, and routinely conclude that the prospect of statutory trust assets being depleted constitutes irreparable injury. *See, e.g.*, *CP Produce, LLC v. Quality Fresh Farms, Inc.*, No. 1:18-cv-00077 DAD EPG, 2018 WL 1980749, at *1 (E.D. Cal. Jan. 19, 2018); *Chula Brand CA, Corp. v. Martinez*, 17cv37-JLS (KSC), 2017 WL 107672, at *3–4 (S.D. Cal. Jan. 11, 2017); *Newland N. Am. Foods, Inc. v. H.P. Skolnick, Inc.*, No. 5:13-cv-00934 EJD, 2013 WL 792672, at *3 (N.D. Cal. Mar. 4, 2013); *Herb Fresh, LLC v. GR Prods., LLC*, No. 5:12-cv-03669 EJD, 2012 WL 2906592, at *2–3 (N.D. Cal. July 16, 2012); *Pittman v. Stow Food – Navajo, Inc.*, No. 12cv1670-IEG (WMC), 2012 WL 12885231, at *1–2 (S.D. Cal. July 6, 2012); *T.Q.M. Food Serv., Inc. v. Santanas Grill, Inc.*, No. 12cv1254-IEG (MDD), 2012 WL 12872452, at *1–2 (S.D. Cal. June 6, 2012); *Batth v. Market 52, Inc.*, No. 1:11-CV-1806 AWI SKO, 2011 WL 5240439, at *2 (E.D. Cal. Nov. 1, 2011); *F.T. Produce, Inc. v. AGWA, Inc.*, No. 11-CV-102 JLS (WVG), 2011 WL 677259, at *3 (S.D. Cal. Jan. 21, 2011); *Rey Produce SFO, Inc. v. Mis Amigos Meat Market, Inc.*, No. C 08-1518 VRW, 2008 WL 1885738, at *1–2 (N.D. Cal. 2008).

Here, plaintiff has shown it is likely to succeed on the merits of its claim. Plaintiff persuasively asserts that defendants are "dealers" within the meaning of PACA. (*See* Buckley Decl. at ¶¶ 6–9.) Among other things, plaintiff has presented evidence that during the relevant timeframe defendant AM Group operated under USDA PACA license number 20160590, which lists Kim as the principal for AM Group. (*Id*. at ¶ 9 & Ex. 2.) Plaintiff has likewise produced evidence that during the relevant timeframe it operated under PACA license number 20150701. (*Id*. at ¶ 27.)

Plaintiff further demonstrates that the produce at issue was sold in interstate commerce, as required by 7 U.S.C. § 499a(b)(8). (*Id*. at ¶ 15 & Ex. 3.) The invoices sent to defendants contain the statutorily required language to ensure plaintiff preserved its right to the benefits of the statutory trust under 7 U.S.C. § 499e(c)(4). (*Id*. at ¶ 28 & Ex. 3.) Plaintiff has likewise produced evidence that the invoices it seeks payment for have not been paid. (*Id*. at ¶¶ 20–23 & Ex. 3.) Invoices totaling $146,045.00, reflecting table grape shipments sold to defendant AM Group, are

attached (*id*., Ex. 3), and counsel has provided support for the requested, contractually allowable interest, attorney's fees, and costs (*see* Tristao Decl. at ¶¶ 13–16.) Accordingly, and in light of the absence of any evidence to the contrary, the court finds it is likely plaintiff will succeed on the merits of its PACA claim.

Plaintiff has also shown a likelihood of irreparable injury in the form of dissipation of the trust assets. Plaintiff's sales manager, Thomas Buckley, declares that Kim admitted that the table grapes in dispute were sold to a company in Korea, possibly to a related family company. (Buckley Decl.§ at ¶ 25.) Any proceeds from those sales would therefore be trust assets. *See* 7 U.S.C. § 499e(c)(2). However, the fact that defendants repeatedly broke promises to remit even partial payments to plaintiff suggests to Buckley that the trust assets have been or are being dissipated. (Buckley Decl. ¶ 25.) In addition, Buckley "is informed and believe[s] that AM Group is suffering severe financial difficulties and that PACA trust assets rightfully belonging to Plaintiff are being dissipated, possibly forever beyond Plaintiff's reach." (*Id*.) As identified above, courts routinely accept the dissipation of assets from the statutory trust as indicative of irreparable injury.

The balance of equities thus tips clearly in favor of plaintiff here. Plaintiff is statutorily entitled to a trust in the proceeds of any sales from the produce it shipped until the outstanding invoices are paid in full. *See* 7 U.S.C. § 499e(c)(2). Defendants' failure to respond to the order to show cause results in a failure on their part to demonstrate any hardship they will suffer by being forced to not dissipate the trust assets.

Lastly, the issuance of an injunction here would be in the public interest. Congress specifically passed this statute because it had found there was "a burden on commerce in perishable agricultural commodities." 7 U.S.C. § 499e(c)(1); *Tanimura & Antle, Inc.*, 222 F.3d at 135 ("In particular, Congress intended to protect small farmers and growers who were especially vulnerable to the practices of financially irresponsible commission merchants, dealers, and brokers."). Given plaintiff's high likelihood of success on the merits and the Congressional directive in passing PACA, the public interest will be served by granting the preliminary injunction here.

Rule 65 states a court may only issue a preliminary injunction "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Because the only evidence before the court indicates the invoices are due and owing, and defendants' failure to participate results in the absence of any showing of any hardship, the court concludes no bond or posting of security is required of plaintiff at this time.

## PRELIMINARY INJUNCTION ORDER

For the reasons set forth above:

IT IS HEREBY ORDERED that Defendants AM Group, Inc., and Chris Kim, and their agents, bankers, subsidiaries, successors, assignees, principals, employees, officers, directors, shareholders, attorneys, and representatives, are preliminarily enjoined during the pendency of this action, pursuant to Federal Rule of Civil Procedure 65, from engaging in, committing, or performing directly and indirectly, any and all of the following acts:

A. Removing, withdrawing, transferring, assigning or selling to any other person or entity, the proceeds from the sales of any or all existing or future inventories of food or other products derived from perishable agricultural commodities and/or receipts of payment for such commodities sold prior to the date of this order and/or otherwise disposing of assets, books or funds;

B. Taking any other action whatsoever which causes, has the effect of causing, or which otherwise dissipates plaintiff's beneficiary interests in PACA trust assets. 7 U.S.C. §499e, et seq.;

C. Taking any other action whatsoever which violates 7 U.S.C. §499e(c)(1) through (4), inclusive, and/or 7 U.S.C. §499b(4) [PACA § 2].

IT IS FURTHER ORDERED that defendants, their partners, officers, directors, shareholders, owners, bankers, agents, subsidiaries, successors, assignees, principals, assignors, attorneys and persons acting in concert with them, shall, within 24 hours after being served with this Order, deposit into the trust account of plaintiff's counsel, Darryl J. Horowitt, Esq. of Coleman & Horowitt, LLP, PACA Trust assets in the amount of at least $161,495.18, consisting

of the principal sum due of $146,045.00, plus contractual finance charges through January 31, 2020, in the amount of $7,850.18, plus reasonable attorneys' fees in the amount of $7,200.00, plus filing fees of $400.00, owing to Plaintiff.

IT IS FURTHER ORDERED hat during the pendency of this action, defendants, their partners, shareholders, owners, agents, bankers, subsidiaries, successors, assignees, principals, attorneys, and persons acting in concert with them shall be and hereby are prevented from transferring, withdrawing or in any other manner removing PACA trust assets, including funds on deposit in banking accounts held by or on behalf of defendant, from defendant's banking accounts, including funds on deposit in banking accounts held by or on behalf of defendant AM Group, from defendant's banking accounts, including but not limited to defendant AM Group accounts held at Wells Fargo Bank, and any other accounts subsequently discovered to be standing in defendant's name or for its benefit.

IT IS FURTHER ORDERED that during the pendency of this action, defendants, and their counsel, agents, shareholders, owners, or representatives, shall be preliminary enjoined from engaging in, committing, or performing directly and indirectly, any and all of the following acts:

D.  Removing, withdrawing, transferring, assigning or selling to any other person or entity, the proceeds from the sales of any or all existing or future inventories of food or other products derived from perishable agricultural commodities, including, but not limited to growing crops, and/or receipts of payment for products sold prior to the date of this order and/or otherwise disposing of assets, books or funds;

E.  Taking any other action whatsoever which causes, has the effect of causing, or which otherwise dissipates plaintiff's beneficiary interests in the trust assets;

F.  Taking any other action whatsoever which violates 7 U.S.C. §499e(c)(1) through (4), inclusive, and 7 U.S.C. §499b(4) [PACA § 2].

IT IS FURTHER ORDERED that in the event defendants lack sufficient funds to promptly deposit the sums described above, defendants shall be and hereby are required and ordered to:

/////

G. Immediately account to the court and plaintiff for all assets of the PACA trust from commencement of defendants' business through the date of this Order.

H. Immediately assign defendant's inventory of perishable agricultural commodities and produce related receivables to plaintiff for collection until plaintiff is fully paid, and deposit and/or deliver complete accounts, records, and information of all of said receivables to plaintiff's counsel without charge to the trust, and subject to plaintiff's counsel making a weekly accounting for all receivables received or collected by plaintiff's counsel in that regard. Plaintiff's counsel shall act as trustee in connection with its duties of collection of the accounts receivable and shall deposit any cash assets of the trust which are collected under this order in a trust account. In plaintiff's sole discretion, to the extent necessary to prevent loss of defendant's inventory of perishable agricultural commodities through decay, over-ripening, spoliation or improper storage or handling; plaintiff may immediately take possession of any such inventory and sell such inventory through a PACA licensed broker. The proceeds of any such sales shall be held in trust by plaintiff's counsel pending further order of this court. Any broker retained by plaintiff or plaintiff's counsel to effectuate such sales may retain a brokerage commission in an amount reasonable and customary in the produce industry.

I. Endorse any checks made, endorsed or paid, wire transfers, and cash receipts to defendants which are trust assets and which are in their possession or obtainable by defendants at the time of the entry of this Order, or which defendants obtains or which become obtainable by defendants after the entry of this Order, including but not limited to checks representing payment for sales of inventory, and shall deliver said assets within 48 hours of defendants' receipt of them to plaintiff's counsel as set forth above. Likewise, defendants shall deliver any cash assets of the PACA trust which are in its possession or are obtainable by defendants at the time of the entry of this order, or which defendants obtain or which become obtainable by defendants after entry of this Order, within 48 hours of defendants' receipt of them to plaintiff's counsel.

IT IS FURTHER ORDERED that during the pendency of this action, and continuing thereafter, plaintiff and their counsel, agents, or representatives, shall have full and complete and continuing access to all of defendant's books and records, which shall include but not necessarily

be limited to, defendant's accounts receivable and payable ledgers, invoices, ledgers, computer runs, bank statements and canceled checks, relating to defendant's business and financial status from commencement of defendant's business activities forward for the purpose of verifying defendant's accountings required by this Order and for enforcement of this Order. Defendant shall, upon 48 hours' notice by plaintiffs' counsel, allow inspection and copying of the books and records of said defendant by plaintiff or their representatives at defendant's place of business.

IT IS FURTHER ORDERED that during the pendency of this action, plaintiff shall be entitled to depose, under oath, at reasonable times and places, upon at least 48 hours' notice, defendants and/or defendants' principals, owners, directors, officers, shareholders, employees, agents and accountants concerning any matter pertaining to any accounting due pursuant to this Order, any books or records which plaintiff is entitled to inspect under this Order, the trust assets or any of defendants' business assets, and/or defendants' business practices, procedures or operations from commencement of defendants' business activities.

IT IS FURTHER ORDERED that Wells Fargo Bank and any other bank in which deposit amounts standing in the name of defendant, or any of them, are located, to release information about the above-described accounts including the amounts contained in the accounts, to plaintiff's counsel, in confidence, to the extent necessary to confirm compliance with this Order.

IT IS FURTHER ORDERED that no bond shall be required to be posted by plaintiff before this preliminary injunction is effective.

IT IS SO ORDERED.

Dated: **February 21, 2020**

_____
UNITED STATES DISTRICT JUDGE