UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERN VINEYARDS, INC.,          )<br>                                                      )<br>            Plaintiff,               )<br>                                                      )<br>         v.                             )<br>                                                      )<br>AM GROUP, INC., et al.,        )<br>                                                      )<br>            Defendants.           )<br>                                                      )<br>_____ ) | Case No.: 1:20-cv-00199 NONE JLT<br><br>FINDINGS AND RECOMMENDATIONS GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>(Docs. 25, 26) |

Kern Vineyards, Inc. asserts that it sold and shipped perishable commodities, including table grapes, to AM Group, Inc. who failed to pay for the produce. Plaintiff seeks to hold AM Group and Chris Kim—"an officer, director, member, shareholder and/or owner" of AM Group—liable for breach of contract, violations of the Perishable Agricultural Commodity Act, breach of the fiduciary duty, unjust enrichment, and conversion.  (*See generally* Doc. 1)

Because Defendants failed to respond to the allegations in the complaint, Plaintiff now seeks default judgment against AM Group and Chris Kim.  (Docs. 25, 26) For the following reasons, the Court recommends Plaintiff's motion for default judgment be **GRANTED** in the total amount of $**178,609.73.**

I.      **Procedural History**

Plaintiff initiated this action by filing a complaint on February 7, 2020.  (Doc. 1) Plaintiff asserts sold and shipped table grapes to AM Group between August 9 and October 4, 2019.  (*Id.* at 3)

1

Plaintiff reports that it has "performed all conditions, covenants and obligations required to be performed by it under the agreements for sale," yet Defendants failed to pay for the produce. (*Id.*)

The same date as Plaintiff filed its complaint, Plaintiff filed a motion for a temporary restraining order or preliminary injunction under PACA to prevent AM Group and Chris Kim "from dissipating assets held in statutory trust for Plaintiff." (*See* Doc. 26 at 9; *see also* Doc. 3) On February 12, 2020, the Court granted the temporary restraining order and directed Defendants to submit any written opposition no later than February 19, 2020. (Doc. 12)  In addition, the Court ordered Defendants to appear at a hearing on February 21, 2020, to show cause "why they should not be commanded by order of this court and required to distribute PACA trust assets in the amount of at least $161,495.18, consisting of the principal sum. (*Id.* at due of $146,045.00, plus contractual finance charges through January 31, 2020 in the amount of $7,850.18, plus reasonable attorneys' fees in the amount of $7,200.00, plus filing fees of $400.00, owing to plaintiff." (*Id.* at 7-8)  The Court indicated that all checks, wire transfers, and cash receipts received by Defendants after the issuance of the order and deposited with Wells Fargo would "be frozen until there are sufficient assets set aside to pay plaintiff in the amount of $164,656.50." (*Id.* at 9) After Defendants failed to appear at the hearing, the Court granted Plaintiff's motion for a preliminary injunction. (Doc. 19)

On February 25, 2020, "Wells Fargo informed Plaintiff that three banking accounts belonging to AM Group and Kim were frozen pursuant to the preliminary injunction and on March 3, 2020, Plaintiff demanded that any and all funds in said frozen accounts up to the sum of $161,495.18, as stated in the February 21, 2020 order be forwarded to Plaintiff's counsel." (Doc. 26 at 9, citing Tristao Decl., Exh. D-E) Wells Fargo then sent Plaintiff's counsel "a check in the sum of $113,228.89 to be held in Coleman & Horowitt Attorney Client Trust Account until this matter is adjudicated." (*Id.* at 9, citing Tristao Decl. ¶16)

Although Defendants were properly served with the summons and complaint, they failed to respond to the complaint within the time prescribed by the Federal Rules of Civil Procedure.  Upon application of Plaintiff, default was entered against the Defendants on March 12, 2020. (Docs. 20, 21, 22, 23) Plaintiff filed the application for default judgment now pending before the Court on May 1, 2020.  (Docs. 25, 26) Defendants have neither appeared nor opposed the motion.

## II. Legal Standards Governing Default Judgment

The Federal Rules of Civil Procedure govern the entry of default judgment. After default is entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Entry of default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. *Id.* at 1472.

## III. Plaintiff's Factual Allegations and Evidence

The Court accepts Plaintiff's factual assertions as true because default has been entered against Defendant. *See Pope*, 323 U.S. at 22. With the motion now pending, Plaintiff has also presented evidence, including in declaratory form and exhibits, which support the allegations in the complaint.

Plaintiff alleges Kern Vineyards "was engaged in the business of selling and/or shipping agricultural commodities," including table grapes, and possessed a PACA License. (Doc. 1 at 3, ¶¶16-17; *see also* Doc. 27 at 8-10 [Buckley Decl., Exhs. 1-2]) Plaintiff also asserts that "Defendants were engaged in the business of buying and selling perishable agricultural commodities as defined by

3

PACA." (*Id.* at 3-4, ¶18)

According to Plaintiff, "Between on or about August 9, 2019, and October 4, 2019, in a series of transactions, Plaintiff sold and shipped perishable agricultural commodities, namely, table grapes, to Defendant AM Group at said Defendant's request, for which said Defendant agreed to pay AM Group in the principal amounts at least as great as the sum of $146,045.00." (Doc. 1 at 3, ¶10; *see also* Doc. 27 at 3, Buckley Decl. ¶¶ 14-15) These grapes "traveled in or in contemplation of foreign commerce between Korea and the State of California." (Doc. 26 at 7, citing Buckley Decl. ¶19 [*see also, e.g.,* Doc. 27 at 12, 14-15]) Further, AM Group purchased grapes that had "a cumulative shipping weight of at least 2,000 pounds in any one day received or contracted to be received," which amounts to "produce in wholesale and jobbing quantities." (*Id.*, citing Buckley Decl. ¶ 20)

With each transaction, "Plaintiff forwarded to AM Group invoices" that "set[] forth in detail the amounts owed … for Defendant's purchase of the commodities, cumulatively totaling $146,045.00." (Doc. 1 at 3, ¶11; *see* Doc. 27 at 12-33 [Buckley Decl., Exh. 3]) On the invoice, Plaintiff provided notice of the company's intent to preserve its PACA trust rights:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5 (c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. §499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

(Doc. 1 at 4, ¶21; *see also* Doc. 27 at 12)  Payments were due within ten days after the delivery of produce, and the invoices also provided that "any necessary collection costs, including attorneys fees, will be added to the amount owed" if the payment was delinquent. (*Id.* at 4, ¶22; Doc. 26 at 7) Further, the invoice informed Defendants that "[p]ast due accounts will accrue 1.5% finance charge per month (18% APR)." (*Id.*, ¶23)

Plaintiff alleges that the company "repeatedly demanded that Defendant AM Group pay the amounts due and owing under the invoices." (Doc. 1 at 3, ¶12) Defendant "failed and refused… to pay Plaintiff for the produce purchased and no part of those sums due and owing has been paid." (*Id.*)

Thomas Buckley, Sales Manager for Kern Vineyards, reports that he spoke with defendant Chris Kim—the sole principal, officer, and director of AM Group— on September 15, 2019, regarding

the delinquent invoices. (Doc. 27 at 4-5, Buckley Decl. ¶¶ 25-26) He asserts he also met with Mr. Kim on October 1, 2019, at which time "Mr. Kim advised that payment would be withheld for the single load that AM Group contended had quality issues, but payment was forthcoming for the remaining invoices." (*Id.* at 5, ¶27) Despite these representations, Plaintiff received payment for the shipment with reported quality issues but did not make payments on the other invoices. (*Id.*, ¶¶28) In December 2019, Mr. Kim again indicated the "payment… was forthcoming." (*Id.*, ¶30) However, "[n]o payment was … ever received for the perishable agricultural commodities identified in the Outstanding Invoices." (*Id.*; *see also* Doc. 1 at 3, ¶12)

### IV. Discussion and Analysis

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds they weigh in favor of granting Plaintiff's motion for default judgment.

#### A. Prejudice to Plaintiff

The first factor considers whether a plaintiff would suffer prejudice if default judgment is not entered, and potential prejudice to the plaintiff weighs in favor of granting a default judgment. *See Pepsico, Inc.*, 238 F. Supp. 2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. *Id.*; *see also Microsoft Corp. v. Nop*, 549 F. Supp.2d 1233, 1236-37 (E.D. Cal. 2008) ("Plaintiff will be prejudiced if default judgment is denied because plaintiff will be without other recourse for recovery"). Because Plaintiff has no other means to recover damages from AM Group and Chris Kim, the Court finds Plaintiff would be prejudiced if default judgment is not granted.

#### B. Merits of Plaintiff's claims and the sufficiency of the complaint

Given the kinship of these factors, the Court considers the merits of Plaintiff's claims and the sufficiency of the complaint together. *See Yelp Inc. v. Catron,* 70 F. Supp. 3d 1082, 1098 (N.D. Cal. 2014) ("For ease of analysis, the merits of Plaintiffs substantive claims and sufficiency of the complaint are considered together"); *see also Premier Pool Mgmt. Corp. v. Lusk*, 2012 WL 15932060, at *5 (E.D. Cal. May 4, 2012). The Ninth Circuit has suggested that, when combined, the factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175.

In the application for default judgment, Plaintiff requests damages related to breach of contract,

PACA violations, and conversion.  (Doc. 26 at 11-16) Accordingly, the Court addresses the merits of only these claims related to the motion now pending.

### 1. Breach of contract

Plaintiff's first claim for relief in the complaint is for breach of contract against all defendants. (Doc. 1 at 2-3) A claim of breach of contract arises under state law and requires a plaintiff to demonstrate (1) the existence of a contract, (2) performance or excuse for nonperformance by the plaintiff, (3) breach by the defendants, and (4) resulting damages. *Alcalde v. NAC Real Estate Invs. & Assignments, Inc*., 316 Fed. App'x 661, 662 (9th Cir. 2009) (citing *First Comm. Mort. Co. v. Reece*, 108 Cal. Rptr. 2d 23, 33 (Ct. App. 2001)); *see also Haberbush v. Clark Oil Trading Co.,* 33 Fed. App'x 896, 898 (9th Cir. 2002) (identifying "agreement, consideration, performance by plaintiff, breach by defendant, and damages" as elements to a breach of contract).

Plaintiff asserts, "On August 9, 2019, and October 4, 2019, Plaintiff and AM Group entered into an agreement whereby Plaintiff sold and shipped perishable agricultural commodities, namely, table grapes, to AM Group at its request, and AM Group agreed to pay Plaintiff the principal amounts in the amount of at least $146,045.00." (Doc. 26 at 12, citing Doc. 1, ¶10; Doc. 27 at 3, Buckley Decl. ¶15) Thus, Plaintiff has established that sales agreements existed between Kern Vineyards and AM Group. Further, Plaintiff reports Kern Vineyards "performed all conditions, covenants, and obligations required to be performed by it under the agreements for sales of produce including delivering the table grapes to AM Group, as requested, and timely submitting invoices to AM Group for the sale totaling $146,045.00." (*Id.*, citing Doc. 1, ¶13; Doc. 27 at 3, ¶31; Buckley Decl., Exh. 3)

In addition, Plaintiff reports Defendants failed to make the required payments within ten days after the final invoice dated October 4, 2019, or no later than October 14, 2019.  (Doc. 26 at 12, citing Doc. 1 at 3, ¶12; Doc. 27 at 5, Buckley Decl. ¶ 24) Thus, Defendants breached the agreements with Kern Vineyards.  As a result of this breach, Plaintiff "suffered losses in the amount of $146,045.00." (Doc. 26 at 12, citing Doc. 1 at 3, ¶14; Doc. 27 at 6, Buckley Decl. ¶ 37) Consequently, the Court finds Plaintiff established a claim for a breach of contract under California law.

### 2. PACA violations

PACA was enacted to "suppress unfair and fraudulent practices in the marketing of fruits and

vegetables in interstate and foreign commerce" and "provides a code of fair play … and aid to [agricultural] traders in enforcing their contracts." 7 C.F.R. Part 46, Fed. Reg. 45735, 45737 (Nov. 20, 1984).

Under PACA, it is unlawful for any commission merchant, dealer, or broker to "fail or refuse truly and correctly to account and make full payment in respect of any transaction in any [perishable commodity] to the person with whom such transaction is had... or to fail to maintain the trust as required." 7 U.S.C. § 499b(4). A trustee much hold any commodities and receivables, or proceeds from the sale of the commodities, in trust for the benefit of all unpaid suppliers or sellers until full payment of the amount owed has been received. 7 U.S.C. § 499e(c).

To establish a claim under PACA, a plaintiff must demonstrate:

> (1) the commodities sold were perishable agricultural commodities, (2) the purchaser was a commission merchant, dealer, or broker, (3) the transaction occurred in contemplation of interstate or foreign commerce, (4) the seller has not received full payment on the transaction, and (5) the seller preserved its trust rights by including statutory language referencing the trust on its invoices.

*Beachside Produce, LLC v. Flemming Enters.*, LLC, 2007 US. Dist. LEXIS 44074 at *6 (N.D. Cal. June 6, 2007), citing 7 U.S.C. § 499e(c)(3)-(4); 7 C.F.R. § 46.46(c), (f). In addition, "individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act." *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997).

Plaintiff's business consists of selling wholesale quantities of produce in interstate commerce. (Doc. 1 at 2) AM Group has a valid PACA license, number 20160590, and at the time of sale, Plaintiff held PACA license number 20171117. (Doc. 1 at 3-4, ¶¶16-18) Plaintiff sold table grapes to AM Group in the amount of $146,045.00, which was in anticipation of foreign commerce. (*See id.* at 2-3, ¶¶9-10; *see also* Doc. 27 at 12, 14-15; Buckley Decl. ¶19) Kern Vineyards, as the seller, reserved its statutory trust rights under PACA by providing … written notice of Plaintiff's intent to preserve Plaintiff's PACA trust rights on the face of each invoice." (Doc. 1 at 4, ¶21) However, AM Group has not paid Kern Vineyards for the table grapes.

Plaintiff alleged facts supporting the creation of a trust and a breach of that trust under 7 U.S.C. § 499b(4) by AM Group. Moreover, Plaintiff has alleged facts that defendant Chris Kim was "an

7

officer, director, member, shareholder and/or owner of AM Group" (Doc. 1 at 2, ¶5). Thus, Mr. Kim was in a position in which he could control the assets of AM Group, but the company failed to preserve trust assets for Plaintiff. Because Mr. Kim breached the fiduciary duty, he may be held personally liable for the tortuous act. *Sunkist*, 104 F.3d at 283; *see also Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701 (2nd Cir. 2007). Consequently, the Court finds Plaintiff has sufficiently stated a claim under PACA against both AM Group and Chris Kim.

### 3. Conversion

As recognized by the Ninth Circuit, conversion has three elements under California Law: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Service, Inc*., 958 F.2d 896, 906 (9th Cir. 1992); *see also Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581 (2005) ("elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages").

Plaintiff alleges Kern Vineyards is currently entitled to $146,045.00 from its table grapes tendered to AM Group. As discussed above, AM Group failed to pay the invoices due and Kern Vineyards established damages from this conduct. Thus, the allegations establish a claim for conversion under California law. *See Mission Produce, Inc. v. Organic Alliance, Inc.*, 2016 WL 1161988 at *8 (N.D. Cal. Mar. 24, 2016) (finding a claim for conversion where the defendants "failed to turn over the amounts due" and the plaintiff "suffered damages from this conduct").

### C. Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Here, Plaintiff seeks judgment in the amount of $178,609.73, including fees, costs, and finance charges. (Doc. 25 at 2) This amount represents the total sum owed after a series of sales of table grapes by Plaintiff. AM Group did not comply with its obligations under PACA, and Chris Kim violated his fiduciary duties. Thus, the amount of damages is proportional to Defendants' conduct, and this factor does not weigh against default judgment.

### D. Possibility of dispute concerning material facts

There is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts factual allegations in Plaintiffs' Complaint as true and (2) though properly served, defendants AM Group and Chris Kim failed to appear and defend. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *see also Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"). Therefore, this factor does not weigh against default judgment.

### E. Whether default was due to excusable neglect

Generally, the Court will consider whether a defendant's actions, such as a failure to file an answer, is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Defendants were served with the summons and complaint on February 13, 2020. (Docs. 14, 15) Thus, it is unlikely the failure to respond was the result of excusable neglect. *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default"). Accordingly, this factor does not weigh against default judgment.

### F. Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment because the defendants' failure to appear makes a decision on the merits impractical.

## V. Relief Requested

Based upon the foregoing, Plaintiff has stated claims for breach of contract, violation of PACA, and conversion, and the *Eitel* factors weigh in favor of granting default judgment. Therefore, the Court turns to the relief requested related to this claim and the evidence presented by Plaintiff related to the damages. *See Pope*, 323 U.S. at 22 (allegations regarding the amount of damages must be proven); *see also Pope v. United States*, 323 U.S. 1, 22 (1944); *DR JKL Ltd. v. HPC IT Educ. Ctr.,* 749 F. Supp. 2d 1038, 1051 (N.D. Cal. 2010) ("Upon entry of default, all well-pleaded facts in the complaint are taken

as true, except those relating to damages").

### A. Damages under PACA

Under PACA, a "commission merchant, dealer, or broker... shall be liable to the person or persons injured … for the full amount of damages" after a violation. 7 U.S.C. §499e(a). Plaintiff seeks $146,045.00 for the unpaid table grape invoices. Based upon the evidence presented, the Court finds Defendants are liable for the violations of PACA and recommends Plaintiff's motion for damages be **GRANTED** in the amount of $146,045.00.

### B. Attorneys' Fees, Pre-Judgment Interest, and Costs

Plaintiff alleges that it contracted with Defendant to recover attorney fees by providing the following written terms on the invoices: "Should this invoice become delinquent…, any necessary collection costs, including attorney fees, will be added to the amount owed." (Doc. 1 at 4, ¶22) The invoices also indicate: "Past due accounts will accrue 1.5% finance charge per month (18% APR)." (*Id.*, ¶23; *see also* Doc. 27 at 12) According to Plaintiff, these terms "were bargained-for terms of the contract and are sums owing in connection with the sales transactions that are the subject of this complaint." (*Id.* at 5, ¶24) Thus, Plaintiff requests fees in the amount of $19,832.00; pre-judgment interest (through April 1, 2020) totaling $12,171.38; and reimbursement of costs totaling $561.35. (*See* Doc. 25 at 2)

#### 1. Fees

Though attorneys' fees are not specifically provided for under PACA, it does not preclude an award of fees. *J.C. Produce v. Paragon Steakhouse Restaurants*, 70 F.Supp.2d 1119, 1123 (E.D. Cal. 1999). The Ninth Circuit determined a PACA beneficiary may also recover expenses and fees that are due contractually or otherwise "in connection with" the transaction, or series of transactions, causing the Plaintiff to bring a PACA trust claim. *Middle Mountain Land & Produce. v. Sound Commodities*, 307 F.3d 1220, 1223-24 (9th Cir. 2002). The Court declined to determine whether an invoice created a contractual right to attorneys' fees in a PACA case, but rather remanded that issue to the district court. *Id.* at 1225. In other contexts, the Ninth Circuit determined that terms expressed in an invoice for the sale of goods impose contractual duties. *See United States ex rel. Hawaiian Rock Prods. Corp. v. A.E. Lopez Enters.*, 74 F.3d 972, 976 (9th Cir. Guam 1996).

1    Courts have determined invoices may create a contractual obligation to pay attorneys' fees after
2    considering the language on the invoices issued according to state law. *Coosemans Specialties, Inc. v.*
3    *Gargiulo*, 485 F.3d 701, 705 (2nd Cir. 2007).  In *Southwest Concrete Products v. Gosh Construction*
4    *Corp.*, 51 Cal. 3d 701, 709 (Cal. 1990), the California Supreme Court determined that late charges, in
5    the form of interest, become "part of the contract under section 2207 of the California Uniform
6    Commercial Code."  This statute provides that terms added in an invoice, for example, "become part
7    of the contract unless: (a) The offer expressly limits acceptance to the terms of the offer; (b) They
8    materially alter it; or (c) Notification of objection to them has already been given or is given within a
9    reasonable time after notice of them is received." Cal. U. Com. Code § 2207(2).  Because the Court
10   finds that neither the interest nor attorneys fees terms materially alter the contract for the PACA goods,
11   it appears that the *Coosemans* rationale supports the request for fees here.

12   Moreover, courts in the Ninth Circuit imposed contractual obligations as to terms first
13   expressed in invoices preserving a PACA trust. *Underwood & Wong v. Enriquez*, 2010 WL 2889745
14   at *2 (E.D. Cal. July 21, 2010) ("Pursuant to the express language of the contracts, the prevailing party
15   is entitled to an award of attorneys [sic] fees"); *C. H. Robinson Co. v. Marina Produce Co.*, 2007 WL
16   39311 at *4 (N.D. Cal. Jan. 4, 2007) ("Contractual claims for attorney's fees and interest are within
17   the scope of a PACA trust claim").  Because Plaintiff's invoices indicated Kern Vineyards was entitled
18   to "collection costs, including attorney fees" if the invoices were delinquent, the Court recommends
19   that Plaintiff's request for fees be **GRANTED**.[1]

20         2.    Pre-judgment interest

21   Where supported by a contractual right, prejudgment interest may be included in a PACA trust
22   claim. *Middle Mountain*, 307 F.3d at 1225. The Court has discretion to award reasonable prejudgment
23   interest to a PACA claimant when there is not a contract between the parties, if such award is
24   necessary to promote the interest of the claimant. *Id.* at 1225-26.

25   Invoices showing the sales between Plaintiff and AM Group state: "Past due accounts will
26   accrue 1.5% finance charge per month (18% APR)."  (Doc. 1 at 4, ¶23; *see also* Doc. 27 at 12) Plaintiff

---

28   [1]Counsel did not submit billing records related to the tasks performed on the action.  However, this Court previously approved the hourly rate for counsel and found the time expended through February 2020 was reasonable.  (*See* Doc. 19 at 2)

11

argues the pre-judgment interest should be awarded as it was a term of sale, set out on the invoices, and is a sum that is owed in connection with the underlying transactions. (Doc. 26 at 19) Furthermore, this Court previously determined that Plaintiff was entitled to "contractual finance charges." (*See* Doc. 19 at 8)

For the reasons set forth above as to Plaintiff's request for fees, and because pre-judgment interest is owed in connection with the underlying transactions, the Court recommends the Plaintiff's request for pre-judgment interest be **GRANTED**.

### 3. Costs

In addition to damages and interest, Plaintiff seeks reimbursement of court costs in the amount of $561.35. (Doc. 25 at 2) This amount is supported by the record, as the Court's docket reflects payment of the $400 filing fee, Plaintiff reports service of process fees in the amount of $161.35. (Doc 28 at 6, Tristao Decl. ¶36). Therefore, the Court recommends that Plaintiff's request for an award of the costs incurred in filing this PACA matter be **GRANTED**.

### VII. Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. *See Aldabe*, 616 F.2d at 1092. Based upon the foregoing, the Court **RECOMMENDS**:

1. Plaintiff's motion for default judgment be **GRANTED** in amount of $**178,609.73**; and
2. The injunction be rescinded; and
3. Funds currently held in trust, in the amount of $113,228.89, be applied to the judgment.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, Plaintiffs may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///

///

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: __**June 9, 2020**__                              ___*/s/ Jennifer L. Thurston*___
                                                                   UNITED STATES MAGISTRATE JUDGE